UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICIA M. MATTA, ) | CASE NO. 5:12CV2167 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| CAROLYN COLVIN[1], ) | |
| COMMISSIONER OF ) | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Patricia M. Matta ("Plaintiff") seeks judicial review of the final decision of Carolyn Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS the instant case in order for the Administrative Law Judge ("ALJ") to reevaluate and properly apply the treating physician rule to the opinions of Dr. Bressi and Dr. Hill.

## I.   PROCEDURAL AND FACTUAL HISTORY

On January 9, 2009, Plaintiff protectively filed an application for DIB, alleging disability beginning March 3, 2002 due to severe tendinitis in her wrists, shoulders and elbows. ECF Dkt. #12 at 130-137, 148. The SSA denied Plaintiff's applications initially and on reconsideration. *Id*. at 100-106. Plaintiff filed a request for an administrative hearing and on November 30, 2010, an ALJ conducted an administrative hearing. *Id*. at 55, 57. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id*. at 57.

On May 20, 2011, the ALJ issued a decision denying benefits. ECF Dkt. #12 at 16-27. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id*. at 1-8.

On August 23, 2012, Plaintiff filed the instant suit seeking review of the ALJ's decision.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

ECF Dkt. #1. On January 28, 2013, Plaintiff filed a brief on the merits. ECF Dkt. #16. On March 14, 2013, Defendant filed a brief on the merits. ECF Dkt. #17. On March 25, 2013, Plaintiff filed a reply brief. ECF Dkt. #18.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, the ALJ determined that Plaintiff suffered from left shoulder impingement and ongoing left shoulder pain which qualified as severe impairments under 20 C.F.R. § 404.1521 *et seq*. ECF Dkt. #12 at 18. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 19. He discounted Plaintiff's allegations of pain and concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: no overhead lifting; lifting up to ten pounds and twenty pounds occasionally only up to shoulder height; no frequent lifting of any kind; handling of objects only occasionally in the seated position; no crawling or climbing of ladders, ropes or scaffolds; no driving; and avoidance of all exposure to workplace hazards such as unprotected heights and moving machinery. *Id*.

Based upon this RFC and the testimony of the VE by interrogatories, the ALJ found that Plaintiff could not return to her past relevant work, but she could perform jobs existing in significant numbers in the national economy, including the representative occupations of a watchman, counter clerk, or gate guard. ECF Dkt. #12 at 25-26.

## III. **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made

        without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.     If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.     If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V. ANALYSIS

### A. TREATING PHYSICIAN RULE

Plaintiff first asserts that that the ALJ erred in evaluating the opinions of her treating physicians, Dr. Bressi and Dr. Hill. ECF Dkt. #16 at 12-14. Plaintiff contends that the ALJ failed to articulate a valid basis for giving less weight to the opinions of these treating physicians and improperly gave more weight to the opinion of consultative examiner Dr. Scheatzle who examined her one time. *Id*.at 12. The Court agrees and finds that the ALJ did not properly apply the treating physician rule.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i), (c)(2)(ii), (c)(3) through (c)(6) [20 C.F.R. §416.927(c)(2)(i), (c)(2)(ii), (c)(3) through (c)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. Social Security Ruling ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "'be bewildered when told by an administrative

bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.'" *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004), quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544.

However, the Sixth Circuit recognized in *Wilson* that, in some circumstances, a violation of the rule might be "harmless error" if (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation." 378 F.3d at 547. "Thus the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.*" Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010), unpublished.

In the instant case, the ALJ reviewed the opinions of Dr. Bressi, the director of pain management at Cuyahoga Falls Pain Management Center, who had been treating Plaintiff for her shoulder impairments since January 21, 2004. ECF Dkt. #12 at 23-24, 252. The ALJ cited to Dr. Bressi's December 2010 statement and his March 2011 statements. *Id.* On December 13, 2010, Dr. Bressi wrote a letter to Plaintiff's counsel opining that within a reasonable degree of medical certainty, he believed that Plaintiff was permanently and totally disabled due to her right shoulder region disorder, right lateral epicondylitis, right enthesopathy, right hand and wrist tenosynovitis, and right limb pain. *Id.* at 852. He indicated that while a functional capacity evaluation ("FCE") concerning Plaintiff had not yet been done, it was not reasonable to "put her in back to work rehabilitation programs, because she will fail, and it would be a waist[sic] of resources as well as

a burden of unecessary[sic] suffering on her." *Id*. He referred to and enclosed a copy of an office note that he wrote two years prior and he explained that the date of that office note was the time in which he believed that Plaintiff was most likely permanently disabled. *Id.* He further opined that no "physical therapy, surgery, pain injections, or medication adjustments will bring her any further improvement in her functional status to the point she would be able to consider further remunerative activity." *Id*.           On March 18, 2011, Dr. Bressi completed a Pain Questionnaire in which he indicated that Plaintiff experienced pain, the pain was consistent with her medical impairments, the pain affected her ability to concentrate, and she would be unable to mentally and/or physically complete an eight-hour workday because of her pain level. ECF Dkt. #12 at 854. He opined that Plaintiff would have to take so many unscheduled breaks during a workday that it would not benefit an employer. *Id*. He further opined that Plaintiff would likely be "off task" twenty-five percent or more during a typical workday due to her symptoms and she would likely be absent from work more than four days per month due to her impairments. *Id.*

Dr. Hill, Plaintiff's orthopedic specialist who treated her from May 2007[2] through at least July of 2009, completed a Pain Questionnaire on April 5, 2011. ECF Dkt. #12 at 856. He concluded that Plaintiff experienced pain which was consistent with her medical impairments and it affected her ability to concentrate. *Id*. He opined that Plaintiff could not physically and/or mentally complete an eight-hour workday because of the chronic pain that she experienced in her bilateral shoulders, elbows and hands. *Id*. He further opined that if Plaintiff attempted to work, she would require unscheduled breaks every two to three hours and she would be "off task" twenty-five percent or more of the workday and would be absent more than four days per month due to her impairments or treatment. *Id*. The record contains Dr. Hill's notes of treatment from May 7, 2007 through July 13, 2009 which indicate that he treated her for mononeuritis of the upper limb and mononeuritis mutiplex with a lesion of the ulnar nerve, arthropathy of the shoulder, peripheral enthesopathies of the left shoulder and lateral epicondylitis of the left shoulder. *Id*. at 721-751.

---

[2] Dr. Hill's May 7, 2007 treatment note indicates that Plaintiff reported that she had treated with Dr. Hill before this time and Dr. Hill acknowledged as much when he noted that Plaintiff "is well known to me." *Id*. at 721, 723.

-6-

In granting "little weight" to these opinions, the ALJ explained that both Dr. Bressi and Dr. Hill based their opinions on Plaintiff's current condition which was well after the relevant period in the case since Plaintiff's alleged onset date was March 3, 2002 and her date last insured was December 31, 2007. ECF Dkt. #12 at 23. The ALJ indicated that because Plaintiff had testified that her condition had progressively worsened, he "must then conclude that the claimant was less limited as of December 31, 2007 than she is presently." *Id*.

The Court finds that the ALJ failed to properly apply the treating physician rule to the opinions of Drs. Bressi and Hill. Rather than determine whether the opinions of Drs. Bressi and Hill were supported by medically acceptable clinical and laboratory diagnostic techniques and whether they were consistent with the other substantial evidence in the case record, the ALJ instead mainly relied upon Plaintiff's statement that her condition had progressively worsened over the years and found that Drs. Bressi and Hill based their opinions on Plaintiff's current conditions, which presumably had become worse since her date last insured. There is no indication that the ALJ considered the treatment notes of these doctors or that the ALJ considered the factors of 20 C.F.R. § 404.1527(c) in giving the treating physicians' opinions less than controlling weight.

Curiously, while the ALJ attributed "less weight" to the opinions of Plaintiff's treating physicians because their opinions were issued after Plaintiff's date last insured, the ALJ afforded *more* weight to the opinion of an agency examining physician even though he had examined Plaintiff well after her date last insured and based his opinion on Plaintiff's current conditions. ECF Dkt. #12 at 24. The ALJ acknowledged this discrepancy, but explained that the agency physician's opinion was "based on actual objective clinical findings, and not conclusory and vague statements." *Id.*

The Court finds error in the ALJ's reasoning. Dr. Bressi's December 13, 2010 opinion letter clearly refers to a prior office note for support. ECF Dkt. #12 at 592, 852. This office note, most likely the one dated December 4, 2008, indicated that Dr. Bressi had examined Plaintiff on that date and he opined that he had a "very strong feeling that she is totally disabled" at least for worker's compensation purposes. *Id*. at 593. He remarked that Plaintiff's work injury was over ten years old and he saw no improvement even with the surgeries that Plaintiff had undergone, as well as the other modalities such as physical therapy. *Id*. He indicated that Plaintiff would need maintenance

medications because "she is going to have chronic pain the rest of her life." *Id*. He noted that she did get significant help from her medications, which included Kadian, Hydromorphone, Dilaudid, Topamax, Amitriptilyne and Hydrocodone. *Id.* However, he nevertheless opined that she was not able to work due to the pain from her injuries. *Id*.

      Many other treatment notes are contained in the record of Dr. Bressi's extensive and long-standing treatment with Plaintiff. These treatment notes address the relevant time period at issue in this case and show his numerous evaluations, treatment modalities and medication adjustments for Plaintiff's diagnoses of left elbow enthesopathy, left hand and wrist tenosynovitis, left wrist strain/sprain, left shoulder impingement, left shoulder arthropasty and left arm cubital tunnel syndrome. ECF Dkt. #12 at 589-647, 754-786, 791. The ALJ did not address any of these notes and failed to indicate that he had even considered them. The record also includes a January 21, 2004 letter from Dr. Bressi to Dr. Cheng, Plaintiff's orthopedic surgeon at the time, in which Dr. Bressi informed him that he was the physician of record for Plaintiff's worker's compensation claim for her left shoulder injury. *Id*. at 252. Dr. Bressi explained that Plaintiff's work injury occurred on May 11, 2003 when she heard a pop in her left shoulder while she was working as a hairdresser. *Id*. He noted that Plaintiff had two surgeries with excision of the clavicle without relief of the pain, with weakness in the left shoulder and arm and she reported that she could not sleep at night in a regular bed because when she laid down, the pain was too much. *Id*. Dr. Bressi further indicated that Plaintiff had a history of right rotator cuff tear, but she was doing well with it and was fully functional on the right side. *Id*. Dr. Bressi confirmed that Dr. Cheng had deemed Plaintiff surgically maximized regarding her left shoulder injury and he had concluded that no other surgical interventions would be appropriate or beneficial. *Id.* Upon examination, Dr. Bressi noted that Plaintiff had significant tenderness around the shoulder joint and a MRI showed the rotator cuff to be intact and surgical changes in the shoulder area that were most likely scar tissue wrapping around the nerves. *Id*. His plan was to try electrical stimulation and chiropractic treatment and he prescribed a slow-release morphine for her to take at night. *Id*. He indicated that he wanted to try conservative treatment first and stated that "but, remember, this is a well-set pain problem with a significant injury that was probably just the last step in a cascade of things that were brewing as a

work hazard, because of the requirements that she keep her shoulders fixed and for many hours a day." *Id.* at 254. He further opined that if he could not help Plaintiff, "she, certainly, at this present time, cannot work one-third of an eight-hour day with that left arm. She will fail. There is no sense putting her into a voc rehab program at this present time." *Id.* The treatment notes that followed outline Dr. Bressi's examinations, prescriptions for modalities, and his ultimate conclusion as to the nature and severity of Plaintiff's impairments and her ability to work.

The Court makes no determination as to whether Dr. Bressi's treatment notes constitute adequate support for his opinions or the weight that the ALJ should give to Dr. Bressi's opinions. Rather, the Court finds that the ALJ erred by not addressing Dr. Bressi's opinions in conjunction with the support that exists in the record and the other relevant evidence in the record in order to determine whether they provided support for his opinions of whether they were consistent with the other substantial evidence in the case record.

The Court notes that the ALJ did offer additional reasons for attributing "little weight" to the opinions of Dr. Bressi. The ALJ had also explained that Dr. Bressi's statement that Plaintiff was disabled is a determination left to the ALJ. The ALJ is correct that the ultimate determination of disability and RFC is left to the ALJ. However, the Court finds that this reason is insufficient to constitute substantial evidence for the ALJ's granting of "little weight" to Dr. Bressi's opinions because the ALJ tied this reason to the alleged lack of support in the record for the opinions even though the ALJ failed to indicate whether he had considered any of Dr. Bressi's many treatment notes.

In his final reason for attributing "little weight" to Dr. Bressi's opinions, the ALJ found that Plaintiff's daily living activities belied Dr. Bressi's opinions because she had testified that "assuming no issue with headaches, she would have no difficulty working a job that did not require significant use of her arms." ECF Dkt. #12 at 23-24. The Court has some concern with the ALJ's reliance upon this testimony as a basis for attributing "little weight" to Dr. Bressi's opinions. The transcript of the ALJ hearing shows that Plaintiff testified that she began experiencing migraine headaches after her third shoulder surgery in 2005 or 2006 and suffers from severe migraines on a daily basis that cause her to vomit, take her medications, and lay back down in bed. *Id.* at 71-72.

-9-

She also testified as to the extent of her shoulder injuries and the severe problems that they presented with her arms and hands as well. *Id*. at 83-84. The ALJ then asked Plaintiff the following:

> If there was a job that basically did not require you to use your arms or hands at all for almost the entire day - - I don't know if that's even possible, but I mean, if there were one, would you be able to do that, if you really just could sit there like you're sitting there now and just kind of hold your hands there, and maybe you'd be talking and sitting almost the entire day and very little use of the hands? Would that be something you'd be able to do?

*Id*. at 84. Plaintiff responded that "Yeah, why not?" and the following exchange thereafter occurred between the ALJ and Plaintiff:

> Q: (ALJ)      You think you would be able to do that?
>
> A: (Plaintiff)   As long as I don't get my headaches, yeah.

*Id*. This testimony is somewhat different than that which the ALJ summarized in his decision. At the hearing, the ALJ stated that Plaintiff would use her hands "very little" in the scenario that he presented to Plaintiff, but he stated in his decision that she would not be required to have "significant use" of her hands. Moreover, the ALJ is again relying upon evidence to his benefit regarding Plaintiff's current condition to determine her condition at the time of the relevant period. Yet he downgraded the weight he attributed to Plaintiff's treating physicians' opinions because they were based upon Plaintiff's current condition.

As to Dr. Hill, the ALJ acknowledged that his opinion was consistent with that of treating physician Dr. Bressi. ECF Dkt. #12 at 24. However, the ALJ gave "little weight" to Dr. Hill's opinion solely because it was based upon Plaintiff's current condition rather than her condition as it existed prior to December 31, 2007. *Id*. As explained above, the Court finds that this reasoning does not comply with the treating physician rule as the ALJ used Plaintiff's current condition in very contrary ways in his decision. Moreover, Dr. Hill provided very detailed treatment notes of each of his examinations of Plaintiff. ECF Dkt. #12 at 721-751. Each note documents Plaintiff's complaints, physical examination findings, an assessment and a plan to address Plaintiff's complaints. *Id*. Again, the Court is not determining the weight that the ALJ should give to Dr. Hill's opinion. Rather, the Court finds that the ALJ must follow the treating physician rule in evaluating this opinion and must explain the reasons for any weight that is given to Dr. Hill's

-10-

opinion and must evaluate that opinion pursuant to the factors 20 C.F.R. § 404.1527(c) if he determines that it is entitled to less than controlling weight.

In sum, the Court finds that the ALJ failed to properly apply the treating physician rule to the opinions of Drs. Bressi and Hill. The ALJ reasoned that their opinions were deserving of less weight because they were based upon Plaintiff's current condition, although the record includes their treatment notes documenting years of treatment with Plaintiff and in particular, the relevant years at issue in this case, and the ALJ failed to address these notes in his opinion. Moreover, the ALJ relied upon the same reason, Plaintiff's current condition, to downgrade the weight given to the treating physicians' opinions, yet elevated the weight that he gave a one-time examining agency physician who based his opinion upon the same current condition outside of Plaintiff's date last insured.

Since the ALJ failed to properly apply the treating physician rule to the opinions of Dr. Bressi and Dr. Hill by not considering their supporting treatment notes, and failed to undertake consideration of the factors of 20 C.F.R. § 404.1527(c) in affording those opinions less than controlling weight, the Court REVERSES the decision of the Commissioner and REMANDS this case for further evaluation and analysis under the treating physician rule.

### B. **CREDIBILITY AND STEP FIVE EVALUATION**

Plaintiff also challenges the ALJ's credibility determination and his Step Five findings. ECF Dkt. #16 at 14-18. However, the Court declines to address Plaintiff's remaining assertions because the ALJ's evaluation upon remand may impact the issues relating to credibility and the hypothetical questions presented to the VE. *See Reynolds v. Comm'r of Soc. Sec.,* No. 424 Fed. App'x at 411, 417 (6th Cir. 2011).

### VI. CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS this case to the ALJ for further evaluation and analysis consistent with the treating physician rule.

DATE: August 27, 2013  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE